**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN**

CRYSTAL HARLOW, individually and
on behalf of all others similarly situated,                   Case No:

             Plaintiff,

v.                                                                                  **CLASS ACTION COMPLAINT**

SIXTH GEAR DISTRIBUTION, a South Carolina          **JURY TRIAL DEMANDED**
limited liability company,

             Defendant.

---

## CLASS ACTION COMPLAINT

Plaintiff, Crystal Harlow ("Plaintiff" or "Harlow"), individually and on behalf of all others similarly situated, by and through her undersigned attorneys, file this Class Action Complaint against Defendant, Sixth Gear Distribution LLC ("Defendant" or "Sixth Gear"), and alleges the following based upon personal knowledge as to her own actions, and as to all other matters, respectfully alleges, upon information and belief, as follows:

### NATURE OF THE ACTION

1.     This is a class action brought individually by Plaintiff on behalf of consumers who purchased Defendant's Experience CBD Products including, CBD Gummies (the "CBD Products" or "Products")[1] for personal use and not for resale.

2.     Defendant formulates, manufactures, advertises, and sells the CBD Products throughout the United States, including in the State of Michigan.

---

[1] This category of Defendant's Products contains several different flavors and dosages. Defendant's CBD Gummies Products include Assorted Gummies, Mini Gummy Bears, Cherry Gummies, Sour Strawberry Gummies, Sour Gummy Worms, Rainbow Belts, Sour Watermelon Slices, Sour Peach Gummies, Coke Bottle Gummies, Sour Pineapple Gummies, and Sour Apple Slices (collectively the "CBD Products" or the "Products"). See also ¶¶ 42-45 below.

3.     The CBD (cannabidiol) Product market is a multibillion-dollar business enterprise that is lucrative for its market participants and is expected to further expand into a $16 billion-dollar industry by 2025.[2]

4.     With knowledge of growing consumer demand for CBD Products, Defendant has intentionally created a marketing scheme designed to target these consumers. Defendant makes numerous false and misleading claims on the front label of its CBD Products as well as on the retail website selling its CBD Products to illustrate and convey to consumers the level of potency associated with benefits that consumers can expect to receive through their consumption. Specifically, Defendant misrepresents that the CBD Products have specific amounts of CBD when, in fact, the Products do not contain the amount of CBD advertised and are instead grossly under-dosed.

5.     Defendant's multiple and prominent systematic misrepresentations regarding the amount of CBD in the Products form a pattern of unlawful and unfair business practices that harm the public.

6.     Plaintiff and members of the putative class purchased the CBD Products for their ingredients, potency, and effects, and paid a premium for Defendant's CBD Products.

7.     Accordingly, Plaintiff and each of the Class members have suffered an injury in fact caused by the false, fraudulent, unfair, deceptive, and misleading practices as set forth herein.

8.     Plaintiff, on behalf of the class she seeks to represent, brings this lawsuit based on Defendant's unlawful and unconscionable consumer practices under the Michigan Consumer Protection Act, Mich. Comp. Laws Ann. §§ 445.903 *et seq*. (Count I), as well as Defendant's

---

[2] Iris Dorbian, <u>CBD Market Could Pull In $16 Billion By 2020, Study Says</u>, Forbes.com (March 12, 2019), https://www.forbes.com/sites/irisdorbian/2019/03/12/cbd-market-could-pull-in-16-bln-by-2025-says-study/#69e764bb3efd.

breach of express warranty (Count II) or alternatively breach under common law warranty and contract law (Count III), breach of implied warranty (Count IV), and breach of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq*. (Count V).  Furthermore, this lawsuit pleads causes of action for unjust enrichment (Count VI) and injunctive relief (Count VII).  Accordingly, Plaintiff seeks, *inter alia* actual damages and refunds, treble damages, punitive damages, attorney fees, injunctive relief, and the costs of this suit.

9.      Plaintiff brings this suit to halt the unlawful sales and marketing of the CBD Products by Defendant and for damages she sustained as a result.  Given the massive quantities of the Products sold all over the country, this class action is the proper vehicle for addressing Defendant's misconduct and for attaining needed relief for those affected.

## PARTIES

10.      Plaintiff Harlow is a resident and citizen of Commerce Township, Michigan.  On November 3, 2019, Plaintiff purchased Experience CBD Assorted Gummies 900mg strength, 30 pack, at a cost of $31.99, from MI-Wild Side-BH in Birmingham, Michigan.

11.      Prior to purchasing the Product, Plaintiff saw and read the front and back of the Product's packaging, and relied on Defendant's representation and warranty that each contained 900mg of CBD per 30 pack of gummies (30mg of CBD per gummy).  Plaintiff reasonably understood Defendant's labeling representation to mean that the Product contained 30mg of CBD per gummy.

12.      Plaintiff would not have bought Defendant's CBD Products or would have paid less for the Products had she known that the labeling she relied on was false, misleading, deceptive and unfair.

13.      Defendant Sixth Gear Distribution LLC is a limited liability company with its principal place of business at 1455 Commerce PL, Myrtle Beach, South Carolina 29579. Defendant creates, formulates, manufactures, advertises, distributes and sells various CBD

Products throughout the United States, including Michigan.  Defendant knew that the labeling of its CBD Products are false and misleading to a reasonable consumer, because they contain either no amount of the challenged ingredients, or they contain amounts too low to have any pharmacological effect.

## JURISDICTION AND VENUE

14.     This Court has original jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d), because (a) at least one member of the proposed class is a citizen of a state different from Defendant, (b) the amount in controversy exceeds $5,000,000, exclusive of interest and costs, (c) the proposed class consists of more than 100 members, and (d) none of the exceptions under this subsection apply to this action.

15.     The Court has personal jurisdiction over the parties because Defendant conducts substantial business in Michigan and has had systematic and continuous contacts with Michigan.

16.     Venue is proper in this District under 28 U.S.C. § 1391 because a substantial part of the events giving rise to the claims occurred in and emanated out of this District.  Defendant's conduct has injured putative Class Members in this District. Defendant also transacts business within this District.  Accordingly, this Court has jurisdiction over this action and venue is proper in this Judicial District.

## COMMON FACTUAL ALLEGATIONS

17.     Defendant specializes in the creation, formulation, manufacture, sale, and marketing of various CBD Products under the "Experience CBD" brand name.  Defendant sells the Products in all 50 states via its website, other affiliate websites, and directly to consumers at gas stations and convenience stores.

18.     The CBD market is growing rapidly, and consumer demand for CBD products is increasing at a level high.

19.    In fact, Scott Gottlieb, former commissioner of the Food and Drug Administration from May 2017 to April 2019, recently warned, "The CBD craze is getting out of hand."[3]

20.    CBD, short for cannabidiol, is a chemical compound from the cannabis plant. CBD is a naturally occurring substance that is used in products like oils and edibles to impart a feeling of relaxation and calm. Unlike its cousin tetrahydrocannabinol (THC), it is not psychoactive. In other words, CBD does not give the user a "high."

21.    According to former FDA commissioner Gottlieb, "many of the [CBD] compound's expansive benefits are fanciful, and in fact, the sale of much of the product is illegal under current law."[4]

22.    Most CBD is extracted from the leaves, flowers, and stalks of the cannabis plant via solvent or heat extraction methods. The solvent extraction method uses solvents to separate the compounds from the plant. On the high end, $CO_2$ (Carbon dioxide) is used as the solvent. On the low end, harsh chemicals (ethanol, butane, kerosene, etc.) are used as the solvent. In the heat extraction method, steam is used to extract the oil in a gentle and effective way.

23.    Due to the growing demand of CBD Products, companies in the market sell CBD in many forms to reach a wide audience. The most common forms of CBD products include oils, tinctures, cosmetics, topical creams, gummies, chocolate, powder and off-the-shelf beverages.

24.    The Food and Drug Administration ("FDA") has not legalized CBD for sale as a supplement. The agency has stated that it wants more information on CBD and additional time to consider how it might regulate production, marketing, labeling, distribution and dosage recommendations.[5]

---

[3] Scott Gottlieb, The CBD craze is getting out of hand. The FDA needs to act., The Washington Post (July 30, 2019 at 5:33 p.m. EDT), https://www.washingtonpost.com/opinions/the-cbd-craze-is-getting-out-of-hand-the-fda-needs-to-act/2019/07/30/94c8024c-b211-11e9-8f6c-7828e68cb15f_story.html?noredirect=on.

[4] Id.

[5] Amy Abernathy and Lowell Shiller, FDA is Committed to Sound, Science-based Policy on CBD, U.S. Food & Drug Administration (July 17, 2019), https://www.fda.gov/news-events/fda-voices-perspectives-fda-leadership-and-experts/fda-committed-sound-science-based-policy-cbd.

25.     The FDA acknowledges that "there are many unanswered questions about the science, safety, and quality of many of these [CBD] products."[6]

26.     Furthermore, "[t]he FDA also tested the chemical content of cannabinoid compounds in some of the products, and many were found not to contain the levels of CBD they claimed to contain."[7]

27.     Because the FDA does not regulate CBD, it is possible to buy a product that contains less CBD than advertised, or even a product that contains small amounts of THC.

28.     Due to the lack of government regulations or oversight, many CBD manufacturers and distributors take advantage of the lack of regulatory oversight and misrepresent the contents of CBD Products.

29.     In fact, a 2017 study demonstrated that less than a third of 84 CBD products tested contained the amount of CBD advertised on their labels.[8]  Additionally, the FDA has reported that many CBD sellers advertise unsubstantiated health benefits, warning consumers to "beware purchasing and using such products."[9]

30.     Some local governments and regulatory bodies are restricting some CBD distribution.  For example, The New York City Department of Health has cracked down on restaurants, bars, coffee shops and other food service establishments from adding CBD to food or beverages.[10]

---

[6] Id.

[7] Id.

[8] Marcel O. Bonn-Miller, et al., Labeling Accuracy of Cannabidiol Extracts Sold Online, JAMA: The Journal of the American Medical Association, 2017;318(17):1708-1709, https://jamanetwork.com/journals/jama/fullarticle/2661569.

[9] U.S. Food & Drug Administration (October 22, 2019), Warning Letters and Test Results for Cannabidiol-Related Products, https://www.fda.gov/news-events/public-health-focus/warning-letters-and-test-results-cannabidiol-related-products.

[10] amNewYork, NYC ban on CBD-infused food and drinks is in force, https://www.amny.com/eat-and-drink/nyc-cbd-food-ban-1.33245187.

31.     Similarly, Massachusetts regulators have banned the sale of some hemp products, including foods infused with CBD and dietary supplements.[11]

32.     Most CBD Products are sold online, in local health-food stores, CBD-specific retailers, or convenience stores and gas stations.  Researchers and medical professionals advise consumers to look for products that show how much CBD is in each dose, not just the whole product.[12]

33.     Dosages of CBD are expressed in milligrams, or "mg", and vary depending on the form of the product.

34.     The amount of CBD a consumer should take depends on a range of factors, including: body weight; the condition being treated; individual body chemistry; and the concentration of CBD in each pill, capsule, drop, gummy, etc.

35.     Because there are so many variables that go into deciding how much CBD to take, it is recommended that consumers consult with a doctor about an appropriate dosage and any potential risks of taking the wrong dosage(s).

36.     Therefore, it is clear that taking the right dosage of CBD is very important to consumers.

37.     Stronger doses may be more suitable for certain CBD consumers.  These include people with severe pain or other debilitating symptoms, as well as those with a relatively high CBD tolerance.  And many consumers find that incrementally increasing the dosage is the best way to achieve the desired effects of CBD.

38.     As such, consumers pay a price premium for higher dosed CBD Products over lower-dosed CBD Products.

---

[11] Massachusetts Department of Agricultural Resources, Policy Statement Regarding the Sale of Hemp-Derived Products in the Commonwealth, https://www.mass.gov/files/documents/2019/06/12/MDAR%20Policy%20Statement%20Sale%20of%20Hemp.pdf.

[12] Lisa L. Gill, CBD Goes Mainstream, Consumer Reports (April 11, 2019), https://www.consumerreports.org/cbd/cbd-goes-mainstream/.

39.     At all relevant times, Defendant has advertised and labeled its CBD Product as containing a certain amount of CBD, which a reasonable consumer, including Plaintiff, understands to mean that the Product actually contains that specific amount of CBD.  Such representations constitute an express warranty regarding the Product's contents.

40.     Contrary to Defendant's representations, however, independent laboratory testing, commissioned by Plaintiff's attorney, confirms that the CBD Products do not contain the amount of CBD as advertised.

***Defendant's Deceptive Advertising and Labeling***

41.     Defendant's website is replete with misrepresentations that the Product contains specific amounts of CBD, specifically that "Delicious gummy candy infused with 30mg of CBD isolate per piece."[13]

### The Products

42.   Experience CBD Assorted Gummies:



---

[13] https://experiencecbd.com/products/assorted-gummy-candy-cbd?variant=23153358340196 (last visited November 11, 2019)

Figure 1: Experience CBD Assorted Gummies, Mixed Flavors, 360mg of CBD (30mg of CBD per gummy).[14]

43.     On its website, Defendant represents the Experience CBD Assorted Gummies as follows: "Delicious gummy candy infused with 30mg of CBD isolate per piece.  100% THC FREE.  Package comes with an assortment of CBD gummies.  Candy selection may vary.  180mg – 6 pack, 360mg – 12 pack, 540mg – 18 pack, 900mg – 30 pack, 1800mg – 60 pack."

44.     Each of the individual gummies in the "CBD Assorted Gummies" shown above are also sold separately, including:

A.  <u>Mini Gummy Bears</u>



Figure 2: Mini Gummy Bears, 30mg size.

Defendant represents on its website that the Mini Gummy Bears are "[d]elicious gummy bears infused with 15mg of CBD. Choose strengths from 30mg to 120mg of CBD. 30mg - 2 pack, 60mg - 4 pack, 90mg - 6 pack, 120mg - 8 pack."

B.  <u>Cherry Gummies</u>

---

[14] Id.



Figure 3: Cherry Gummies, 30 mg size.

Defendant represents on its website that the Cherry Gummies are "[d]elicious cherry gummies infused with 30mg of CBD isolate per piece. Choose between 30mg (1 pack) to 120mg (4 pack) of CBD. This products [sic] contains high concentrations of CBD and is completely THC FREE." Like other gummy products, this product is sold in 30mg, 60mg, 90mg, and 120mg sizes.

C. Sour Strawberry Gummies



10

Figure 4: Sour Strawberry Gummies, 30mg size.

Defendant represents on its website that Sour Strawberry Gummies are "[d]elicious sour strawberry gummies infused with 30mg of CBD. Choose strengths from 30mg to 120mg of CBD." Like other gummy products, this product is sold in 30mg, 60mg, 90mg, and 120mg sizes.

D.  <u>Sour Gummy Worms</u>



Figure 5: Sour Gummy Worms, 30mg size.

Defendant represents on its website that Sour Gummy Worms are "[d]elicious sour gummy worms infused with 30mg of CBD. Color selection is completely random. Choose strengths from 30mg to 120mg of CBD." Like other gummy products, this product is sold in 30mg, 60mg, 90mg, and 120mg sizes.

E.  <u>Rainbow Belts</u>

11



Figure 6: Rainbow Belts.

Defendant represents on its website that Rainbow belts are "[d]elicious rainbow belts infused with 30mg of CBD. Choose strengths from 30mg to 120mg of CBD." Like other gummy products, this product is sold in 30mg, 60mg, 90mg, and 120mg sizes.

F.  Sour Watermelon Slices



Figure 6:  Sour Watermelon Slices.

12

Defendant represents on its website that Sour Watermelon Slices are "[d]elicious sour gummy watermelon slices infused with 30mg of CBD. Choose strengths from 30mg to 120mg of CBD." Like other gummy products, this product is sold in 30mg, 60mg, 90mg, and 120mg sizes.

G. <u>Sour Peach Gummies</u>



Figure 7: Sour Peach Gummies.

Defendant represents on its website that Sour Peach Gummies are "[d]elicious sour peach flavored gummies infused with 30mg of CBD. Choose strengths from 30mg to 120mg of CBD." Like other gummy products, this product is sold in 30mg, 60mg, 90mg, and 120mg sizes.

H. Coke Bottle Gummies



Figure 8: Coke Bottle Gummies.

Defendant represents on its website that Coke Bottle Gummies are "[d]elicious Cola flavored gummies infused with 30mg of CBD isolate per piece. Choose between 30mg (1 pack) to 120mg (4 pack) of CBD. This products contains high concentrations of CBD and is completely THC FREE." Like other gummy products, this product is sold in 30mg, 60mg, 90mg, and 120mg sizes.

I. Sour Pineapple Gummies



14

Figure 9:  Sour Pineapple Gummies.

Defendant represents on its website that Sour Pineapple Gummies are "[d]elicious sour pineapple flavored gummies infused with 30mg of CBD. Choose strengths from 30mg to 120mg of CBD." Like other gummy products, this product is sold in 30mg, 60mg, 90mg, and 120mg sizes.

J.  Sour Apple Slices



Figure 10: Sour Apple Slices.

Defendant represents on its website that Sour Apple Slices are "[d]elicious sour apple slices infused with 15mg of CBD isolate per piece. Choose between 30mg (2 pack) to 120mg (8 pack) of CBD. This products contains high concentrations of CBD and is completely THC FREE." Like other gummy products, this product is sold in 30mg, 60mg, 90mg, and 120mg sizes.

All of the individual flavor varieties, along with the CBD Assorted Gummies, are collectively referred to as the "Products" or "CBD Products."

45.     Defendant knew that consumers would pay more for Products advertised as containing higher amounts of CBD, and intended to deceive Plaintiff and putative class members by falsely advertising and mislabeling the Product as containing specific amounts of CBD when the Product does not in fact contain those amounts.

**Product Testing Confirms Defendant's Deception**

46.     Contrary to Defendant's uniform misrepresentation of the dosage of CBD on the Products' labels, Plaintiff-commissioned laboratory testing shows that the Products are in fact grossly underdosed.

47.     The laboratory testing demonstrates that Defendant's Products contain significantly lower levels of CBD than advertised.[15]

**Defendant's Deceptive Statements are Illegal**

48.     Plaintiff and the Class members purchased and utilized the Products because they believed, based on the misleading CBD Products' labels and the information on Defendant's website that the Products contained a certain amount of CBD, as advertised.

49.     Defendant's labeling and advertising of the Products deceived and misled Plaintiff and the Class members.

50.     Defendant's misrepresentations regarding the amount of CBD in the Products deceived and misled Plaintiff and the Class members.

51.     The difference between the Products as promised and the Products as sold is significant and material.  Defendant's misrepresentations regarding the amount of CBD contained

---

[15] Laboratory reports show that the Experience CBD Assorted Gummies 900mg strength Product contains only 9.57% of the claimed CBD content.

in the Products diminishes the economic value of the Products.  And the amount of CBD has real impacts on the benefits provided to consumers and on the actual value of the Products.

52.     Plaintiff and Class members would not have purchased the Products or would have paid less for the Products if they had known the truth about the mislabeled and falsely advertised CBD Products.

## CLASS ACTION ALLEGATIONS

53.     Plaintiff brings this action individually and as a representative of all those similarly situated, pursuant to Federal Rule of Civil Procedure 23, on behalf of the below-defined Classes:

> **National Class**: All persons in the United States who purchased the CBD Products within the applicable statutes of limitations preceding the filing of this action through and including the date of judgment (the "National Class").

54.     In the alternative, Plaintiff brings this action on behalf of the following State Sub-Class:

> **Michigan Subclass**: All persons in the State of Michigan who purchased the CBD Products within the applicable statutes of limitations preceding the filing of this action through and including the date of judgment (the "Michigan Subclass").

55.     Excluded from the Classes are: (1) Defendant, and any entity in which Defendant has a controlling interest or which has a controlling interest in Defendant; (2) Defendant's legal representatives, assigns and successors; and (3) the judge(s) to whom this case is assigned and any member of the judge's immediate family.

56.     Plaintiff reserves the right to redefine the Class(es), and/or requests for relief.

57.     Defendant subjected Plaintiff and the respective Class members to the same unfair, unlawful, and deceptive practices and harmed them in the same manner.  As a result of Plaintiff's purchases, Defendant was also unjustly enriched in the same manner.

58.     Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of her claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

59.     The members of the proposed Class(es) are so numerous that joinder of all members is impracticable.

60.     The exact number of Class members is unknown.  Due to the nature of the trade and commerce involved, as well as the number of online and direct complaints, Plaintiff believes the Class(es) consists of thousands of consumers.

61.     Common questions of law and fact affect the right of each Class member, and a common relief by way of damages is sought for Plaintiff and Class members.

62.     Common questions of law and fact that affect Class members include, but are not limited to:

    a.    The extent to which the marketing, advertising, packaging, labeling, and other promotional materials for the Products are unfair, deceptive, false, or misleading;

    b.    Whether Defendant breached an express warranty to Plaintiff and Class members;

    c.    Whether Defendant breached a contract to Plaintiff and Class members;

    d.    The nature and extent of damages, restitution, equitable remedies, and declaratory and injunctive relief to which Plaintiff and the Class are entitled; and

    e.    The extent to which Plaintiff and the Class should be awarded attorneys' fees and the costs of the suit.

63.     Defendant engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiff, on behalf of herself and the other Class members.  Similar or identical statutory and common law violations, business practices, and injuries are involved.

Individual questions, if any, pale in comparison, in both quality and quantity, to the numerous common questions that dominate this action.

64.     Additionally, the factual basis of Defendant's conduct is common to all Class members and represents a common thread of misconduct resulting in injury and damages to all members of the Class.

65.     Plaintiff will fairly and adequately assert and protect the interests of the Class. Specifically, she has hired attorneys who are experienced in prosecuting class action claims and will adequately represent the interests of the Class; and they have no conflict of interests that will interfere with the maintenance of this class action.

    a.    The common questions of law and fact set forth herein predominate over any questions affecting only individual Class members;

    b.    The Class is so numerous as to make joinder impracticable but not so numerous as to create manageability problems;

    c.    There are no unusual legal or factual issues which would create manageability problems, and depending on discovery, manageability will not be an issue as much information is solely in Defendant's possession;

    d.    Prosecution of separate actions by individual members of the Class would create a risk of inconsistent and varying adjudications against Defendant when confronted with incompatible standards of conduct;

    e.    Adjudications with respect to individual members of the Class could, as a practical matter, be dispositive of any interest of other members not parties to such adjudications, or substantially impair their ability to protect their interests; and

    f.    The claims of the individual Class members are small in relation to the expenses of litigation, making a Class action the only procedure in which Class members can, as a practical matter, recover. However, the claims of individual Class members are collectively large enough to justify the expense and effort in maintaining a class action.

**CAUSES OF ACTION**

**COUNT I**
**Violation of The Michigan Consumer Protection Act**
**Mich. Comp. Laws Ann. § 445.903** *et seq.*
**(On Behalf of Plaintiff and the Michigan Subclass)**

66.     Plaintiff restates and incorporates the preceding Paragraphs as though fully set forth herein.

67.     Plaintiff brings this cause of action on behalf of herself and the Michigan Subclass.

68.     Defendant and Michigan Subclass members are "persons" as defined by Mich. Comp. Laws Ann. § 445.903(d).

69.     Defendant advertised, offered, or sold goods or services in Michigan and engaged in trade or commerce directly or indirectly affecting the people of Michigan, as defined by Mich. Comp. Laws Ann. § 445.903(g).

70.     Defendant engaged in unfair, unconscionable, and deceptive practices in the conduct of trade and commerce, in violation of Mich. Comp. Laws Ann. § 445.903(1), including: (a) representing that its goods and services have characteristics, uses, and benefits that they do not have, in violation of Mich. Comp. Laws Ann. § 445.903(1)(c); (b) representing that its goods and services are of a particular standard or quality if they are of another in violation of Mich. Comp. Laws Ann. § 445.903(1)(e); (c) making a representation or statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is, in violation of Mich. Comp. Laws Ann. § 445.903(1)(bb); and (d) failing to reveal facts that are material to the transaction in light of representations of fact made in a positive matter, in violation of Mich. Comp. Laws Ann. § 445.903(1)(cc).

71.     Defendant's representations and omissions were material because they were likely to deceive reasonable consumers.

72.     Defendant intended to mislead Plaintiff and Michigan Subclass members and induce them to rely on its misrepresentations and omissions.

73.     Defendant acted intentionally, knowingly, and maliciously to violate Michigan's Consumer Protection Act, and recklessly disregarded Plaintiff and Michigan Subclass members' rights.  Defendant's knowledge of Products' underdosing of the CBD Products put it on notice that the CBD Products were not as they were advertised.

74.     As a direct and proximate result of Defendant's deceptive acts and practices, Plaintiff and Subclass members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing the CBD Products.

75.     Plaintiff and Michigan Subclass members seek all monetary and non-monetary relief allowed by law, including the greater of actual damages or $250, injunctive relief, and any other relief that is just and proper.

## COUNT II
### Breach of Express Warranty
### (On Behalf of Plaintiff and the Michigan Subclass)

76.     Plaintiff restates and incorporates the preceding Paragraphs as though fully set forth herein.

77.     Plaintiff brings this cause of action on behalf of herself and the Michigan Subclass.

78.     Plaintiff, and each member of the Michigan Subclass, formed a contract with Defendant at the time Plaintiff and the other members of the Class purchased the Products.  The terms of the contract included the promises and affirmations of fact made by Defendant on the Products' packaging and the Products' labels which are similarly represented on Defendant's website and other retailers' websites, and through marketing and advertising, as described above.

21

This labeling, marketing and advertising constitutes express warranties and became part of the basis of the bargain, and part of the standardized contract between Plaintiff and the members of the Class and Defendant.

79.    Plaintiff and the Class performed all conditions precedent to Defendant's liability under this contract when they purchased the Products.

80.    Defendant breached express warranties about the Products and their qualities because Defendant's statements about the Products were false and the Products do not conform to Defendant's affirmations and promises as described above.

81.    Had they known the true nature of the Products, Plaintiff and the Class would not have purchased the Products, or paid as much as they did for the Products.

82.    On November 19, 2019, Plaintiff mailed a pre-suit notice letter to Defendant informing Defendant of its breach of contract.  Defendant has failed to provide any response to Plaintiff's letter.

83.    As a result of Defendant's breach of warranty, Plaintiff and each of the members of the Class have been damaged in the amount of the purchase price of the Products and any consequential damages resulting from their purchases.

### COUNT III
**Breach of Contract/Common Law Warranty**
**(On Behalf of Plaintiff and the Michigan Subclass)**

84.    Plaintiff restates and incorporates the preceding Paragraphs as though fully set forth herein.

85.    Plaintiff brings this cause of action on behalf of herself and the Michigan Subclass against Defendant.

86.     To the extent Defendant's commitment is deemed not to be a warranty under Michigan's Uniform Commercial Code, Plaintiff pleads in the alternative under common law warranty and contract law.

87.     Plaintiff and Michigan Subclass Members purchased the Products either directly from Defendant or through retailers.

88.     Defendant expressly warranted that the Products were fit for their intended purpose in that the Products contained the amount of CBD as advertised.

89.     Defendant made the foregoing express representations and warranties to all consumers, which became the basis of the bargain between Plaintiff, Michigan Subclass Members and Defendant.

90.     Defendant breached the warranties and/or contract obligation by placing the Products into the stream of commerce and selling them to consumers, when the Products do not contain the amount of CBD they were represented to possess.  Because the Products do not contain the amount of CBD as advertised, the Products are unfit for their intended use and purpose.  The underdosing of CBD substantially and/or completely impairs the use and value of the Products.

91.     The underdosing of CBD at issue herein existed when the Products left Defendant's possession or control and were sold to Plaintiff and Michigan Subclass Members.  The underdosing of CBD and impaired use and value of the Products were not discoverable by Plaintiff and Michigan Subclass Members at the time of their purchase of the Products.

92.     On November 19, 2019, Plaintiff mailed a pre-suit notice letter to Defendant informing Defendant of its breach of contract.  Defendant has failed to provide any response to Plaintiff's letter.

93.     As a direct and proximate cause of Defendant's breach of contract, Plaintiff and the Michigan Subclass Members were harmed because they would not have purchased the Products if they knew the truth about the Products.

**COUNT IV**
**Breach of Implied Warranty of Merchantability**
**(On Behalf of Plaintiff and the Michigan Subclass)**

94.     Plaintiff restates and incorporates the preceding Paragraphs as though fully set forth herein.

95.     "Unless excluded or modified (Section 2-316), a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind."  UCC § 2-314(1).

96.     "Goods to be merchantable must be at least such as (a) pass without objection in the trade under the contract description; . . . (c) are fit for the ordinary purposes for which such goods are used; . . . (d) run, within the variations permitted by the agreement, of even kind, quality and quantity within each unit and among all units involved; and . . . (f) conform to the promise or affirmations of fact made on the container or label if any."  UCC § 2-314(2).

97.     "It is not necessary to the creation of an express warranty that the seller use formal words such as 'warrant' or 'guarantee' or that he have a specific intention to make a warranty."  UCC § 2-313(2).

98.     Defendant is a "merchant" within the meaning of UCC § 2-104(1).

99.     Defendant markets the CBD Products in a systematically misleading manner, stating that the Products contain an amount of CBD that is greatly in excess of the amount actually contained in the Products.  As such, Defendant's Products are unfit for these ordinary intended purposes.

100.     Defendant's CBD Products were not merchantable at the time of sale because they do not conform to Defendant's representations as to quality, safety, and reliability, as described above, and because they contain an underdosed amount of CBD.   Defendant therefore breached the implied warranty of merchantability.

101.     Plaintiff and Class members sustained damages as a direct and proximate result of Defendant's breach, including damages for economic injuries from spending money on Products that they would not have spent had they known of the true nature and characteristics of the Products – that they did not contain the amount of CBD as advertised.

102.     Plaintiff and Class members did not receive CBD Products commensurate with the price they paid because the CBD Products are worth far less than advertised.

103.     Plaintiff and Class members have sustained, are sustaining, and will continue to sustain damages, as well as related damages alleged herein if Defendant continues to engage in deceptive, unfair, and unreasonable practices.

104.     On November 19, 2019, Plaintiff mailed a pre-suit notice letter to Defendant informing Defendant of its breach of contract.   Defendant has failed to provide any response to Plaintiff's letter.

105.     Plaintiff and Class members are entitled to injunctive relief, attorneys' fees and costs, and any other relief that the Court deems just and equitable.

106.     Plaintiff, on behalf of herself and all similarly situated Class members, demands judgment against Defendant for compensatory damages, pre- and post-judgment interest, injunctive and declaratory relief, costs incurred in bringing this action, and any other relief as this Court deems just and proper.

**COUNT V**
**Magnuson-Moss – Breach of Express Warranty**
**15 U.S.C. § 2301 *et seq.***
**(On Behalf of the National Class)**

107.    Plaintiff restates and incorporates the preceding Paragraphs as though fully set forth herein.

108.    Plaintiff brings this cause of action on behalf of herself and the National Class against Defendant.

109.    Plaintiff brings this cause of action pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq*.

110.    Plaintiff is a "consumer" as defined in 15 U.S.C. § 2301(3) who purchased the Products subject to Defendant's express warranty, and who is entitled by the terms of the warranty to enforce against the Defendant the obligations of same.

111.    The CBD Products described above are a "consumer product" as defined in 15 U.S.C. § 2301(1) because they are normally used for personal purposes and Plaintiff in fact purchased the Products wholly or primarily for personal use.

112.    Defendant is the manufacturer of the Products.

113.    Defendant is a "supplier" and "warrantor" as defined in 15 U.S.C. § 2301(4) and (5).

114.    The warranty described above is a "written warranty" as defined in 15 U.S.C. § 2301(6).

115.    Plaintiff and Class members purchased the Products because of the manufacturer's warranty, as described above.

116.    Section 2310 (d) of the Magnuson-Moss Warranty Act provides, in relevant part:

a consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under this chapter, or under a written warranty, implied warranty, or service contract, may bring suit for damages and other legal and equitable relief – (b) in an appropriate district court of the United States

117.    As described above, Defendant misrepresented the nature and characteristics of its Products by falsely stating that the Products contained a certain quantity of CBD, when in fact, the Products contained a significantly lower amount of CBD.

118.    Defendant breached its express warranty to consumers that its Products are "infused with 30mg of CBD" per gummy.

119.    Defendant's breach of the express warranty constitutes a violation of 15 U.S.C. § 2310 (d).

120.    As a result, Plaintiff has never received the full use and value of the Products as warranted and suffered damages.

**COUNT VI**
**Unjust Enrichment**
**(On Behalf of Plaintiff and All Classes)**

121.    Plaintiff restates and incorporates the preceding Paragraphs as though fully set forth herein.

122.    Plaintiff brings this cause of action on behalf of herself and all Classes.

123.    Plaintiff and the other members of the Classes conferred benefits on Defendant by purchasing the Products.

124.    Defendant has been unjustly enriched by its retention of the revenues derived from the purchases of the Products by Plaintiff and the other members of the Classes.  Retention of those monies under these circumstances is unjust and inequitable because Defendant's labeling of the Products was misleading to consumers, which caused injuries to Plaintiff and the other members

of the Classes because they would not have purchased the Products if the true facts would have been known.

125.    Because Defendant's retention of the non-gratuitous benefits conferred on them by Plaintiff and the other members of the Classes is unjust and inequitable, Defendant must pay restitution to Plaintiff and the members of the Classes for its unjust enrichment, as ordered by the Court.

## COUNT VII
### Injunctive Relief
### (On Behalf of Plaintiff and All Classes)

126.    Plaintiff restates and incorporates the preceding Paragraphs as though fully set forth herein.

127.    Plaintiff brings this cause of action on behalf of herself and all Classes.

128.    Injunctive relief is appropriate under Fed. R. Civ. P. 23(b)(2) and Fef. R. Civ. P. 65.  Defendant is procuring, or suffering to be done, an act in violation of the Class Members' rights respecting the subject matter of this action.  Plaintiff and members of All Classes are entitled to a judgment that will enjoin Defendant from continuing to deceive Plaintiff and the Classes and prevent Defendant from receiving financial compensation through Defendant's false and misleading advertising, marketing, and sales promotion efforts during the pendency of the class action and thereafter.

129.    Plaintiff and members of the Classes have made a clear showing of the likelihood of the success on the merits because Defendant's claims are demonstrably false and objective proof demonstrates the falsity of the Defendant's claims.

130.    Plaintiff and the members of the Classes have and will continue to suffer irreparable harm through Defendant's false and misleading claims.  Allowing Defendant to continue its

wrongful practices would place the consuming public, including Plaintiff and members of the Classes, at risk of harm by continuing to purchase Defendant's Products through Defendant's wrongful conduct, as alleged herein.

131.    The balance of equities favors Plaintiff and the other Class members because Defendant's wrongful conduct, as alleged herein, has and continues to put Plaintiff and the other Class members at risk.  Further, it would be inequitable to continue to allow Defendant to reap the monetary benefit derived from selling Defendant's Products pursuant to Defendant's false and misleading claims during the pendency of the litigation, trial and thereafter.

132.    The injunction is in the public interest to prevent and restrain Defendant from continuing its wrongful sales practices through systemic, uniform written misrepresentation of a fact critical to the Class Members' purchasing decisions.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that this case be certified and maintained as a class action and for judgment to be entered against Defendant as follows:

A.    Enter an order certifying the proposed Class (and Subclasses, if applicable), designating Plaintiff as the class representative, and designating the undersigned as class counsel;

B.    Declare that Defendant is financially responsible for notifying all Class members of the problems with the Products;

C.    Declare that Defendant must disgorge, for the benefit of the Class, all or part of the ill-gotten profits it received from the sale of the Products, or order Defendant to make full restitution to Plaintiff and the members of the Class;

D.    Defendant shall audit and reassess all prior customer claims regarding the Products, including claims previously denied in whole or in part;

E.    For economic and compensatory damages on behalf of Plaintiff and all members of the Class;

F.      For actual damages sustained and/or treble damages;

G.      For punitive or exemplary damages;

H.      For injunctive and declaratory relief;

I.      For reasonable attorneys' fees and reimbursement of all costs for the prosecution of this action; and

J.      For such other and further relief as this Court deems just and appropriate.

## DEMAND FOR JURY TRIAL

Plaintiff and the Classes request a jury trial for any and all Counts for which a trial by jury is permitted by law.

Dated: December 3, 2019                    Respectfully Submitted,

*/s/ Nick Suciu III*
Nick Suciu III
**BARBAT, MANSOUR & SUCIU PLLC**
1644 Bracken Rd.
Bloomfield Hills, Michigan 48302
313-303-3472
nicksuciu@bmslawyers.com

Jonathan Shub
Kevin Laukaitis
**KOHN, SWIFT & GRAF, P.C.**
1600 Market Street, Suite 2500
Philadelphia, PA 19103
215-238-1700
jshub@kohnswift.com
klaukaitis@kohnswift.com

Gregory F. Coleman*
Rachel Soffin*
Justin Day*
**GREG COLEMAN LAW PC**
First Tennessee Plaza
800 S. Gay Street, Suite 1100
Knoxville, Tennessee 37929
Telephone: (865) 247-0080
Facsimile: (865) 533-0049
greg@gregcolemanlaw.com
rachel@gregcolemanlaw.com
justin@gregcolemanlaw.com

*Pro Hac Vice* Application forthcoming

**Counsel For Plaintiff And The Class**